UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT OF<br>SOUTHERN SCRAP MATERIAL CO., LLC<br>AND SOUTHERN RECYCLING, LLC, AS<br>OWNERS OF THE CIFC IV, THE M/V OIL<br>MARINER, THE FRLN 10254, THE DSLL 554006,<br>THE CG 5207, THE CGB-189, THE ING-1320,<br>THE CC 7928, THE WA 3690, THE WA-1-0013,<br>THE WA-2-0465, THE LB 866, THE WA-1-0194,<br>THE CG 353, THE CG 5108, THE CG 5130,<br>AND THE OR 6678, PETITIONING FOR<br>EXONERATION FROM OR LIMITATION OF<br>LIABILITY | CIVIL ACTION<br><br>NO. 09-2878<br><br>SECTION "N" (3) |

## ORDER AND REASONS

Presently before the Court is the "Motion to Dismiss Complaint for Exoneration from and/or Limitation of Liability" that was filed by Tri-Dyne Tele-Pier, LLC and Tri-Dyne Transportation Systems, LLC (collectively "Tri-Dyne"). Tri-Dyne contends that the Court lacks subject matter jurisdiction and thus seeks dismissal. As stated herein, **IT IS ORDERED** that the motion is **DENIED**. On the showing made, the Court finds that it has subject matter jurisdiction.

On or about September 1, 2008, as a result of Hurricane Gustav, seventeen ships owned by Southern Scrap Material Co., LLC and Southern Recycling, LLC (collectively, "Southern Scrap"), and moored at its facility along the eastern bank of the Inner-Harbor Navigational Canal, broke free of their moorings. The ships then drifted across the canal and allegedly allided with Tri-Dyne's property located on the western bank of the canal. In contesting the Court's jurisdiction, Tri-Dyne contends that, at the time of the alleged allision, Southern Scrap's ships no longer were

"vessels in navigation" for purposes of establishing the Court's admiralty jurisdiction. Specifically, Tri-Dyne urges that the ships were "dead ships" that had lost their vessel status when withdrawn from navigation. Southern Scrap disagrees in all respects.

On the showing made, the Court finds that a genuine issue exists as to the Southern Scrap ships' status as vessels in navigation for purposes of federal admiralty jurisdiction. Specifically, the Court concludes that Southern Scrap's formal de-commissioning of the ships with the United States Coast Guard, even combined with its subjective intent to scrap the ships at some time in the future, did not alone sufficiently change the actual function of the ships such that they should be deemed to have lost their vessel status. Rather, all evidence before the Court suggests that the ships were practically, rather than merely theoretically, capable of use as a means of transportation on water. *See Stewart v. Dutra Const. Co.*, 543 U.S. 481, 493-96, 125 S. Ct. 1118, 1126-28 (2005) (explaining meaning of "vessel" in maritime law).

Significantly, none of the ships were actually being dismantled at the time of the September 1, 2008 hurricane.[1] To the contrary, all of the vessels were afloat with their hulls intact and, if desired, fully capable of water transport by Southern Scrap or a third party to whom the vessels might have been sold.[2] Thus, the jurisprudence on which Tri-Dyne relies – primarily involving ships undergoing actual scrapping operations, or indefinitely moored casino boats utilizing land-based electricity, water, sewer, etc. – is inapposite. *See In re Silver Slipper Casino Venture, LLC*, 264 Fed Appx. 363, 365, 2008 WL 276072, *364-66 (5th Cir. 2008) (unpub.); *De La Rosa v.*

---

[1] *See* Affidavit of Joel Dupre, Exhibit A to Southern Scrap's Opposition at ¶¶ 8-11 (Rec. Doc. 45-2).

[2] *See* Affidavit of Randy Boudreaux, Exhibit A to Southern Scrap's Surreply at ¶3 (Rec. Doc. 63-1)(explaining that Southern Scrap sells some vessels to third parties rather than dismantling them). If sold, the vessels would be towed to a location designated by the third party buyer. *Id.* at ¶4.

*St. Charles Gaming Co., Inc.*, 474 F.3d 185, 187 (5th Cir. 2006); *In re Bayou Concession Scrap, Inc.*, Civ. Action No. 04-2728, 2005 WL 928639, *1-2 (E.D. La. April 31, 2005)(Zainey, J.); *In re Wepfer Marine, Inc.*, 344 F. Supp. 2d 1120, 1124-26 (W.D. Tenn. 2004); *see also Stewart*, 543 U.S. at 493-96; 1126-29 (water craft that has been permanently or indefinitely moored, permanently taken out of the water, or "otherwise rendered practically incapable of transportation or movement" does not remain a vessel).

New Orleans, Louisiana, this 9th day of August 2010.

**KURT D. ENGELHARDT**
**United States District Judge**

**Clerk to Copy:**

Magistrate Judge Daniel E. Knowles, III